**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| Julia A. Shearson, | ) | CASE NO. 1:06 CV 1478 |
| | ) | |
| Plaintiff, | ) | JUDGE PATRICIA A. GAUGHAN |
| | ) | |
| vs. | ) | |
| | ) | |
| United States Department of Homeland | ) | Memorandum of Opinion and Order |
| Security, et al., | ) | |
| Defendants. | ) | |

**INTRODUCTION**

This matter is before the Court upon Defendants' Motion for Summary Judgment (Doc. 18). In this matter, plaintiff seeks documents held by governmental agencies concerning a border stop involving plaintiff and her minor child. For the reasons that follow, the motion is GRANTED in PART and DENIED in PART.

**FACTS**

Plaintiff, Julia Shearson, filed this action against defendants, The United States Department of Homeland Security ("DHS") and The US Customs and Border Protection ("CBP") (sometimes, collectively "government") alleging the wrongful withholding of

1

documents concerning a border stop involving plaintiff and her minor child.  The facts of this case are undisputed.

On January 8, 2006, plaintiff and her four year old daughter attempted to enter the United States via the Peace Bridge.  Plaintiff is a convert to Islam and her daughter is Muslim by birth. Plaintiff provided the CBP agent with her passport, as well as that of her daughter.  Upon scanning the passports, a computer alert flashed "ARMED AND DANGEROUS," at which point plaintiff was ordered to exit her vehicle.  A CBP agent handcuffed plaintiff and indicated that plaintiff's daughter would be taken along with the vehicle.  Not surprisingly, plaintiff became alarmed.  Plaintiff pleaded with the agent to permit her daughter to remain with her.  Thereafter, plaintiff and her daughter were escorted to the terminal where they remained for several hours. Ultimately, plaintiff and her daughter were released without explanation.  As they were leaving, plaintiff inquired as to whether her vehicle was searched and was told that no search was conducted.

The following day, plaintiff sent letters to various congressional representatives.  As a result of the letter, two form letters from the CBP were issued indicating that the stop occurred due to a computer false alert.  Plaintiff then issued requests to defendants pursuant to the Freedom of Information and Privacy Acts seeking all documents related to the border stop and documentation associated with her name.  In response, CBP searched the Treasury Enforcement Communication System ("TECS") and provided plaintiff with nine pages of documents, all of which were redacted in some fashion.  At some point, the CBP performed a second search, which uncovered three additional documents.  The government withheld these documents in their entireties.  Plaintiff believed the response constituted a denial or partial denial of her rights

2

and filed an appeal.  To date, no agency action has been taken regarding plaintiff's appeal.

Thereafter, plaintiff filed this lawsuit asserting two claims for relief.  Count one is a claim brought pursuant to the Privacy Act and the Freedom of Information Act, 5 U.S.C. § 522a, et seq.  Count two alleges improper dissemination.

Defendants move for summary judgment and plaintiff opposes the motion.

## STANDARD OF REVIEW

In accordance with Federal Rule of Civil Procedure 56(c), summary judgment is appropriate when no genuine issues of material fact exist and the moving party is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986); *LaPointe v. United Autoworkers Local 600*, 8 F.3d 376, 378 (6th Cir. 1993).  The burden of showing the absence of any such genuine issues of material facts rests with the moving party:

> [A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which it believes demonstrates the absence of a genuine issue of material fact.

*Celotex*, 477 U.S. at 323.  A fact is material only if its resolution might affect the outcome of the lawsuit under the governing law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

Once the moving party has satisfied its burden of proof, the burden then shifts to the nonmoving party pursuant to Federal Rule of Civil Procedure 56(e), which provides:

> When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleadings, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial.  If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against the

3

adverse party.

In ruling upon the motion, the court must afford all reasonable inferences and construe the evidence in the light most favorable to the nonmoving party.  *Cox v. Kentucky Dept. of Transp.*, 53 F.3d 146, 150 (6th Cir. 1995); *United States v. Hodges X-Ray, Inc.*, 759 F.2d 557, 562 (6th Cir. 1985).  However, summary judgment should be granted if the party bearing the burden of proof at trial does not establish an essential element of its case.  *Tolton v. American Biodyne, Inc.*, 48 F.3d 937, 941 (6th Cir. 1995) (citing *Celotex*, 477 U.S. 317).

**DISCUSSION**

1.  Count one (Freedom of Information Act)

In count one, plaintiff alleges that defendant violated the Freedom of Information Act by improperly withholding documentation.  She seeks access to the records.  The government moves for summary judgment on the grounds that its refusal to disclose the withheld information is justified based on certain statutory exemptions.  According to the government, it satisfied its burden by providing thorough affidavits and an index pursuant to *Vaughn v. Rosen*, 484 F.2d 820 (D.C. Cir. 1973), which are sufficient to enable the Court to ascertain whether the exemption applies.  Plaintiff opposes the motion on the grounds that the *Vaughn* index is inadequate.  In addition, plaintiff argues that the government's search for responsive documents was inadequate.  Plaintiff further argues that the government failed to segregate the non-exempt portions of the responsive documents.  Plaintiff also makes specific arguments regarding each of the claimed exemptions.  Each argument will be addressed in turn.

Pursuant to the Freedom of Information Act, the government must make available agency records that have been properly requested.  An agency is not permitted to withhold

4

documentation unless the information "is exempted under clearly delineated statutory language." *Department of Air Force v. Rose*, 425 U.S. 352, 360-61 (1976); *Kiraly v. Federal Bureau of Investigation*, 728 F.2d 273, 276 (6th Cir. 1984)("an agency may withhold documents, or portions thereof, only if the information contained in the document falls within one or more of nine statutory exemptions...."). The burden is upon the government to demonstrate that a particular exemption applies. Although many courts rely on a *Vaughn* index, a "court's primary focus must be on the substance, rather than the form, of the information supplied by the government to justify withholding requested information." *Vaughn v. U.S.*, 936 F.2d 862, 867 (6th Cir. 1991). Thus, as long as the Court is able to make a "reasoned, independent assessment of the claim of exemption," the form of the information is not relevant. *Id.* A court may conduct an in camera review of the actual documents, rely on a *Vaughn* or detailed affidavit, or take oral testimony in analyzing plaintiff's claim. *Id.* "The ultimate goals remain to '(1) assure that a party's right to information is not submerged beneath government obfuscation and mischaracterization, and (2) permit the court system effectively and efficiently to evaluate the factual nature of disputed information.'" *Id.* (quoting *Vaughn v. Rosen*, 484 F.2d 820, 826 (D.C. Cir. 1973)).

Four documents appears on the *Vaughn* index. The first three documents were withheld in their entireties, while a redacted version of the fourth document was provided to plaintiff. The government provided a *Vaughn* index, as well as affidavits discussing the claimed exemptions. The Court reviewed the affidavits presented by the government purporting to substantiate the reasons for nondisclsoure. The affidavits, however, are conclusory in nature and appear to simply recite the law. Similarly, the *Vaughn* index supplied by the government is of little help.

5

For example, with respect to the first three documents, the *Vaughn* index simply indicates that the documents were withheld, in part based on Exemption 2, because they consist of "internal agency examination procedures."  Because the Court was not able to conduct a proper review of the claimed exemption, the Court ordered the government to produce the documents for an *in camera* review.  The Court has now reviewed the documents and finds that defendants are not entitled to summary judgment.

The government argues that various portions of the documents are exempt from disclosure pursuant to 5 U.S.C. §§ 552(b)(2), (b)(5), (b)(7)(A), (C) and (E).  The Court will discuss the legal implications of the relevant exemptions and will then analyze the exemptions in the context of each of the four documents.

Exemption (b)(2)

Exemption (b)(2) protects from disclosure documents "related solely to the internal personnel rules and practices of an agency." 5 U.S.C. § 552(b)(2).  In order to qualify for the exemption, the government must satisfy a two-prong test.  First, the agency must demonstrate that the "requested information sought to be sheltered from disclosure relates predominantly to an agency's internal 'rules and practices' for personnel." *Abraham & Rose, v. United States*, 138 F.3d 1075, 1080 (6th Cir. 1998).  In the event the agency satisfies the first part of the test, the agency must also show that "the public has no genuine or legitimate interest in the requested information." *Id*. at n.4.  The second part of the test is different depending on the type of information.  "Low (b)2 material" consists of matters which are relatively trivial to the public, including such things as the agency's lunch schedule, parking assignments or the like.  On the other hand, "high (b)2 material" involves matters which may not be trivial to the public, but, if

6

disclosed, may "signficantly risk[] circumvention of agency regulations or statutes.[1]"  *Crooker v. Bureau of Alcohol, Tobacco & Firearms*, 670 F.2d 1051 (D.C. Cir. 1981)(*cited with approval in Abraham & Rose*, 138 F.3d 1075).  Presumably, the public has no "legitimate" interest in "high(b)(2) material."  "Information that merely has the potential for bringing to light the practices by which an agency collects and processes information does not come withing the ambit of the exception." *Rugiero v. United States Department of Justice*, 257 F.3d 534, 549 (6th Cir. 2001) (*citing Abraham & Rose*, 138 F.3d at 1081)).

Exemption (b)(5)

Under this exemption, the government need not disclose "inter-agency or intra-agency memorandums or letters which would not be available by law to a party other than an agency in litigation with the agency."  5 U.S.C. §§ 552(b)(5). "Exemption 5 has been interpreted as preserving to the agencies such recognized evidentiary privileges as the attorney-client privilege, the attorney work-product privilege, and the executive "deliberative process" privilege." *Schell v. U.S. Dept. of Health & Human Services*, 843 F.2d 933 (6th Cir. 1988)(*citing Parke, Davis & Co. v. Califano*, 623 F.2d 1, 5 (6th Cir.1980)).   The government claims that the work product "and/or" the attorney-client privilege applies to one of the documents at issue in this case.  The attorney-client privilege protects "confidential communications between an attorney and his client relating to a legal matter for which the client has sought professional advice." *Judicial Watch, Inc. v. United States Department of Justice*, 306 F.Supp.2d 58 (D.D.C. 2004)(*quoting Mead Data Central, Inc. v. Department of the Air Force*, 566 F.2d 242, 252 (D.C. Cir. 1977)).

---

[1]     It does not appear that the Sixth Circuit has expressly applied the concepts of "low (b)(2) material" and "high (b)(2) material."

7

In addition to establishing that the communication is related to the seeking of professional advice,  the government bears the burden of demonstrating that the information sought is confidential.  *Mead Data*, 566 F.2d at 253.   With regard to the work product privilege, the government must demonstrate that the documents convey the "mental impressions, conclusions, opinions or legal theories of an attorney" and were prepared in anticipation of actual or foreseeable litigation.  *SafeCard Services, Inc. v. S.E.C.*, 926 F.2d 1197, 1202 (D.C. Cir. 1991)(citing Fed. R. Civ. Pro.26(b)(3)).  The thrust of the privilege is to allow the attorney to "think and plan" clearly without public scrutiny.  *See, e.g.*, Federal Information Disclosure, James T. Riley, at § 15.50 (Third Ed. 2000).

Exemptions (b)(7)(A), (C) and (E)

The government also relies on Exemptions (b)(7)(A), (C) and (E).  These exemptions provide as follows,

(b) [FOIA] does not apply to matters that are–

(7) records or information complied for law enforcement purposes, but only to the extent that the production of such law enforcement records or information (A) could reasonably be expected to interfere with enforcement proceedings,...(C) could reasonably be expected to constitute an unwarranted invasion of personal privacy,...(E) would disclose techniques and procedures for law enforcement investigations and prosecutions, or would disclose guidelines for law enforcement investigations or prosecutions if such disclosure could reasonably be expected to risk circumvention of the law....

Plaintiff argues that Exemption (b)(7)(A) cannot be invoked because the government cannot point to any *specific* pending or contemplated law enforcement proceeding.  Plaintiff is correct.  *See*, *Coastal States Gas Corp. v. Department of Energy*, 617 F.2d 854, 870 (D.C.Cir.1980)(must demonstrate pending or contemplated enforcement proceeding to claim exemption). *See also*, *Badran v. United States Department of Justice*, 652 F.Supp. 1440 (N.D.

8

Ill. 1987)("If an agency could withhold information whenever it could imagine circumstances where the information might have some bearing on some hypothetical enforcement proceeding, the FOIA would be meaningless.").  In this case, the government does not claim there exists a pending or contemplated law enforcement proceeding.  Instead, the government argues that border investigations are "ongoing" and, as such, the exemption applies.  In support of its position, the government relies on *Center for National Security Studies v. United States Department of Justice*, 331 F.3d 918 (D.C. Cir. 2003).  In that case, the court held that an enforcement proceeding need not be "presently pending."  Rather, it is sufficient if an investigation is likely to lead to such proceedings.  In addition, the court reiterated the longstanding rule that courts must give deference to executives on matters pertaining to national security.  Based on these notions, the court held that FOIA did not apply to certain information regarding individuals detained after the September 11 attacks.  After the terrorist attacks, President Bush ordered a worldwide investigation into "threats, conspiracies, and attempts to perpetrate terrorist attacks against United States citizens and interests."  In response, the Department of Justice interviewed over one thousand people with whom it was concerned.  A large majority of these individuals were detained on either immigration charges, federal criminal charges or material witness warrants.  A public interest group sought the names and arrest records of all detainees.  The court held that the government satisfied its burden of establishing that disclosure of the information would impede the terrorism investigation.  Relying heavily on the affidavits provided by the government, the court noted that the government established that disclosure of the information would impact national security in that al Qaeda or other terrorist groups would learn who among them had been detained by the government, who among them

9

was not suspected by the government and the identity of the material witnesses likely to impede their terrorist efforts.  Implicit in the ruling, however, is that actual enforcement proceedings are reasonably contemplated against many of the detainees.  Unlike *National Security Studies*, there is no suggestion that the government is contemplating any enforcement proceeding.  The government's generalized statement that border investigations are "ongoing," simply does not satisfy the government's burden to demonstrate that the investigation is "likely to lead" to an enforcement proceeding.  Moreover, the affidavits provided by the government in this case are generalized and do not implicate issues of national security nearly to the degree of those relied on by the court in *National Security Studies*.  As such, the government's reliance on that case is misplaced.   Because the information contained in the documents does not fall within the statutory exemption, the government may not rely on Exemption (b)(7)(A).[2]

Exemption (b)(7)(C) prevents disclosure of law enforcement information that could "reasonably be expected to constitute an unwarranted invasion of personal privacy."  Typically, this type of information includes the identities and personal information concerning law enforcement employees.  Plaintiff does not contest the applicability of this exemption to the extent it was properly applied by the government.

The government also relies on Exemption (b)(7)(E).  Pursuant to Exemption (b)(7)(E), agency records "compiled for law enforcement purposes" are not subject to mandatory disclosure if disclosure would reveal "techniques and procedures for law enforcement

---

[2]     The government asserts (b)(7)(A) only with respect to document two.   As other exemptions are also claimed, the Court's conclusion does not necessarily mandate disclosure.  Each of the other claimed exemptions will be addressed later in this opinion.

10

investigations or prosecutions if such disclosure could reasonably be expected to risk circumvention of the law." 5 U.S.C. § 522(b)(7)(E). The Sixth Circuit has adopted a per se rule regarding the applicability of the first part of Exemption 7(E), *i.e.*, any document compiled by a law enforcement agency qualifies for nondisclosure provided the second part of the test is satisfied. *Rugiero v. United States Department of Justice*, 257 F.3d 534, 550 (6th Cir. 2001); See also, Jones v. Federal Bureau of Investigation, 41 F.3d 238, 249 (6th Cir. 1994). In this case, the Court finds that the CBP is a law enforcement agency. Thus, it need only demonstrate that disclosure of the information would reveal law enforcement techniques which would risk circumvention of the law. Law enforcement techniques that are already well known to the public are not covered by the exemption. *Id*.

Having set forth the relevant law, the Court now turns to the specific documents at issue.

A. Document 1

The first document withheld by the CBP is entitled "Port of Buffalo APV Worksheet." The *Vaughn* index describes the document as a "CBP form," which "describes secondary inspection of plaintiff, and which identifies law enforcement personnel involved in Plaintiff's inspection." The CBP asserts that the document need not be divulged because Exemptions (b)(2), (b)(7)(C) and (b)(7)(E) protect it from disclosure. As set forth above, plaintiff does not dispute that names and other personal identifiers associated with law enforcement personnel need not be disclosed. Accordingly, the Court finds that the CBP properly withheld the names, social security numbers, telephone numbers and employee identification numbers contained in Document 1. This information is exempt from disclosure pursuant to Exemption (b)(7)(C).

The government also claims that the entire document is exempt pursuant to Exemptions

11

(b)(2) and (b)(7)(E).  Unfortunately, the government made no argument as to why either exemption applies to this particular document.  Instead, the government merely recites the general law regarding each exemption.  Nor do the affidavits provide the Court with any assistance.  Faced with the lack of analysis, the Court cannot say that either exemption applies to Document 1.

Exemption (b)(2)

With respect to Exemption (b)(2), the government fails to establish that the document discloses an agency's internal 'rules and practices' for personnel.  Rather, it is a report identifying and discussing plaintiff's border crossing.  Although the document discloses the agency's practice of collecting and documenting information related to border crossings, this is not a sufficient basis on which to invoke Exemption (b)(2).  *See, e.g.*, *Rugiero v. United States Department of Justice*, 257 F.3d 534, 549 (6th Cir. 2001) (*citing Abraham & Rose*, 138 F.3d at 1081)("Information that merely has the potential for bringing to light the practices by which an agency collects and processes information does not come withing the ambit of the exception.")  Nor does the government establish that the public has no real interest in the information contained in the document.  The document appears to be a report of plaintiff's border crossing.  It is not the "trivial" type of information protected by the exemption.  The Court finds, however, that the government need not disclose the "IOIL" number, "CSR" number and the routing instructions at the very bottom of the document.  The Court finds that this information satisfies both prongs of the (b)(2) analysis because it is purely an internal 'rule and practice' for personnel and the public has little interest in disclosure of the information.

Exemption (b)(7)(E)

12

Similarly, the government fails to meet its burden with regard to Exemption (b)(7)(E), which protects disclosure of CBP documents if they contain "techniques and procedures for law enforcement investigations or prosecutions if such disclosure could reasonably be expected to risk circumvention of the law.[3]"  The sole argument presented by the government is that the document is exempt because it could "impede or allow [an] individual to circumvent the secondary inspection process and jeopardize the Agency's mission."  The Court has reviewed the document and, for the most part, finds the government's "argument" unpersuasive.  Again, absent any specific discussion of the document, the Court is left to guess as to how disclosure might "jeopardize the Agency's mission."  It appears that the document discloses the events transpiring after an alert associated with plaintiff's name was triggered.  Notably, the document does not indicate the reason for the trigger, other than to say that plaintiff is considered a "silent lookout.[4]"  Although the Court agrees that plaintiff is entitled to know that she was identified as a "silent hit," the Court has serious doubts as to whether plaintiff would be entitled to know *how or why* she was identified as such.[5]  This "process" is likely to risk circumvention of the law.  In one section of the document, however, there is a reference to the types of inspections that appear to have been performed on plaintiff's vehicle.  The Court finds that disclosure of the types of

---

[3]     This Court has already concluded that the CBP qualifies as a "law enforcement" agency.

[4]     The Court recognizes the possibility that the "trigger" procedure employed by the government may be protected under (b)(7)(E). The documentation provided by CBP, however, does not disclose either why or how a TECS alert came to be associated with plaintiff's name.  Accordingly, the Court need not reach this issue.

[5]     In other documents, plaintiff is identified as a "T92 silent lookout." The same logic applies to this information.

13

inspections performed may risk circumvention of the law.  The CBP is a law enforcement agency charged with protecting this country's borders and it does not appear that these types of inspections are generally known to the public.  Disclosure of the various types of inspections conducted could potentially assist non-law abiding individuals in avoiding detection.  Accordingly, the types of inspections conducted at the border need not be disclosed.   This information appears under the heading "Secondary Vehicle Inspection."  The Court notes that the document also identifies the various agencies contacted in the event an individual is detained at the border.  Plaintiff vehemently argues that she should have access to the names of the agencies.  The government fails to respond to the argument in any fashion.  Upon review, the Court finds that the names of the agencies contacted by CBP in the event an individual is detained is not exempt from disclosure.  Simply knowing which agencies are contacted would not assist an individual in circumventing the law.  In all, with the exception of the information expressly identified by the Court as exempt, the remainder of the document must be produced to plaintiff.

### B.  Document 2

Document two is entitled "Significant Incident Report."  The government argues that the same exemptions applicable to Document 1 also apply to this document.  Specifically, the government relies on Exemptions (b)(2), (b)(7)(C) and (b)(7)(E).[6]  Plaintiff does not dispute that (b)(7)(C) protects the names and other personal identifiers of the law enforcement personnel

---

[6]     The government also claims that the document is exempt pursuant to (b)(7)(A).  As set forth above, however, the Court finds that this exemption is inapplicable because the government fails to identify any *specific* pending or contemplated law enforcement proceeding.

involved in plaintiff's detention.  Accordingly, this information is protected from disclosure.

Exemption (b)(2)

The government argues that the document need not be disclosed because it discloses "internal agency examination procedures."  Beyond this basic statement, the government makes no argument directed as this particular document.  As with Document 1, the affidavit presented by the government does little more than address the law applicable to this exemption.[7]  For the same reasons identified above, the Court finds that the document as a whole does not qualify for Exemption under (b)(2).   The Court finds that the following information is exempt from disclosure pursuant to (b)(2) because it relates predominantly to an agency's internal 'rules and practices' for personnel and is information in which the public has little or no genuine interest: (a) the CBP directive number; (b) the csr number; (C) the CBP form number; (d) the TECS hit number; and (e) the log number.   The Court has reviewed document 2 *in camera* and, based on its review and the lack of specific argument from the government regarding this document, (b)(2) does not exempt any of the remaining information from disclosure.

Exemption (b)(7)(E)

The affidavit is entirely silent with respect to this exemption.  Moreover, the government's motion simply indicates that the document "contains homeland security related

---

[7]      It is not even clear whether the affidavit is directed at documents one through three.  For example, in Paragraph 17 of the Pullo affidavit, the government avers that "Exemption (b)(2) was applied to the pertinent redacted parts of the documents released to plaintiff for the reasons stated above."  Documents one through three, however, were withheld in their entireties.  There is no discussion of these documents either in the affidavits or in defendants' briefs.

information which qualifies for protection under Exemption 7(E) as highly sensitive information should be shielded from disclosure if it also satisfies one of the two protective clauses within this exemption."  The motion does not indicate which of the two "protective clauses" are applicable.  Nor does the government discuss how the information contained in the report could be used to circumvent the law.  Upon review, however, the Court finds that the document does specifically identify various searches performed at the border and one "exam."  Neither the searches nor the exam are commonly known law enforcement techniques.  Further, the Court finds that knowledge of these techniques may assist a non-law abiding individual in avoiding detection at the border.  Accordingly, the Court finds that the government need not disclose this information.  The "exam" appears in section 4 under the heading "synopsis," and the types of searches appears on page 3 under the time line "2123." The remaining information, however, must be produced.

C.  Document 3

The government argues that Exemptions (b)(2) and (b)(5) apply to this document.

Exemption (b)(2)

The Court concludes that, with the exception of the TECS record ID and the IOIL number, which are exempt for the reasons stated above, Exemption (b)(2) is inapplicable.  The document as a whole does not contain "trivial" information.  Nor does disclosure "significantly risk[] circumvention of agency regulations or statutes."

Exemption (b)(5)

Upon review, the Court finds that the government failed to meet its burden of establishing that either the work product or attorney-client privilege exempts this document from disclosure.  As set forth above, in order to assert the attorney-client privilege, the government

16

must demonstrate that the document relates to a legal matter for which the client has sought advice.  In addition, the government must demonstrate that the document represents a confidential communication.  The government falls far short of establishing either prong of this test.  The entirety of the government's position rests on a single notation contained in the *Vaughn* index, which describes the document as an "internal memorandum created by local CBP management for local CBP Office of Assistant Counsel regarding Plaintiff's inspection, which also provided background information relating to plaintiff that was retrieved from a publicly accessible website."  The affidavits provided by defendants do not address this exemption in any fashion.  In addition, the Court has reviewed the document *in camera*.  The document does not identify any author or recipient and does not on its face appear to involve either the giving or receiving of legal advice.  Plaintiff suggests that this type of "memorandum" may be prepared as a matter of course each time the CBP detains an individual.  The government does not respond to this suggestion.  Although the Court in no way concludes that this is in fact a routine report, the government fails to convince the Court that the document involves legal advice in any fashion.  Simply providing information to an attorney is not sufficient to satisfy the mandates of the exemption.  In addition, the government wholly fails to address the confidentiality prong of the analysis.  As such, the Court concludes that the attorney-client privilege does not apply to Document 3.   Nor is there any indication in any of the government's submission that the document was either prepared by an attorney or in anticipation of litigation.  Accordingly, the work product privilege does not apply.[8]

---

[8]     The government also claims that the "foreseeable litigation" aspect of the work product privilege is satisfied upon a showing that the documents were prepared in an attempt to garner evidence and

17

### D.  Document 4

Document 4 is a nine page TECS incident log.  The government provided the document

to plaintiff in a redacted version.  According to the government, the redacted portions of the

document are exempt from disclosure pursuant to Exemptions (b)(2), (b)(7)(C) and (b)(7)(E).

This document is a computer printout and appears to contain essentially the same information set

forth in Document 2.[9]  On the face of the document, the government identified the claimed

exemption next to the redacted material.  Upon review, the Court finds that the government

properly applies Exemption (b)(7)(C).  Accordingly, those redactions stand.  The Court further

finds, as set forth above, that the government properly applied Exemption (b)(2) to exempt

disclosure of computer codes, record ID numbers, rfi numbers, computer function codes,

incident report numbers, csr numbers and the like.  None of the remaining information is exempt

pursuant to Exemption (b)(2).  Although the government neither cited to Exemption (b)(7)(E) or

discusses this exemption in Pullo's affidavit, the government did invoke the exemption in this

litigation.  Upon review, the Court finds that, for the reasons stated above, the types of searches

conducted on plaintiff's vehicle are exempt from disclosure under Exemption (b)(7)(E).  In

addition, on page one, the government may redact the three lines following the phrase "silent

hit," as that information discloses the procedures in place when a "silent hit" is encountered.  All

---

build a case against a suspected wrongdoer.  Even if defendants are
correct, there is no indication that the document contains the
mental impressions, conclusions or legal theories of an attorney.
In fact, the government expressly admits precisely the opposite, *i.e*,
the document was prepared by local CBP management.

[9]     It is entirely unclear to the Court why Document 2 was withheld in
its entirety, while Document 4 was produced in a redacted version.

other information must be produced.

E.  Adequacy of the search

Defendants also move for summary judgment on the grounds that the search conducted to uncover responsive documents was adequate.  Plaintiff disagrees.  According to plaintiff, the DHS simply forwarded the request to the CBP.  Plaintiff claims that DHS cannot avoid its own responsibilities under FOIA by sending the request to a different agency.  According to plaintiff, there are many databases within the DHS that were not searched.  Plaintiff also argues that the *Vaughn* index does not contain dates on which the CBP conducted its searches.  Therefore, plaintiff is not able to analyze whether the CBP acted in bad faith.[10]

The burden of establishing the adequacy of its search lies at all times with the government.  *Rugiero v. United States Department of Justice*, 257 F.3d 534, 547 (6th Cir. 2001).  "In response to a FOIA request, an agency must make a good faith effort to conduct a search for the requested records using methods reasonably expected to produce the requested information."  *Id*.  To evidence the adequacy of its search, the government may rely on reasonably detailed affidavits discussing the scope of the search.  *Id*.  "The question focuses on the agency's search, not on whether additional documents exist that might satisfy the request."  *Id*. (citations omitted).

Upon review, the Court finds that CBP is entitled to summary judgment with regard to the adequacy of the search.  The agency relies on the affidavit of Pullo, who avers that "TECS is the only CBP database that would reasonably contain the information requested...."  She further

---

[10]     The CBP conducted two searches.  Plaintiff claims that it is possible that the second search, which uncovered documents one through four, was not undertaken until this lawsuit was filed.

avers that a search using plaintiff's name, date of birth and passport number was conducted on TECS.  In addition, the Buffalo CBP Port Director provided an affidavit in which he states that all CBP records maintained at the Port of Buffalo were searched and that all responsive documentation has been identified in this lawsuit.  The Court finds that the affidavits demonstrate that the CBP undertook reasonable efforts to locate documents responsive to plaintiff's request.  Whether additional documentation might exist is not relevant to the analysis.  By searching the TECS system in Washington, D.C., as well as the documents maintained in the Buffalo Port, the agency discharged its FOIA duty.  Accordingly, CBP is entitled to summary judgment regarding the adequacy of its search.

The Court finds, however, that summary judgment must be denied with respect to DHS.  In response to plaintiff's argument that the DHS failed to conduct any search whatsoever, the government relies on Pullo's statement that the TECS system is the only CBP database that would contain the requested information.  The affidavit, however, does not speak to whether any *DHS* databases contain responsive documents.  Rather, it simply provides that TECS is the only *CBP* database that would contain responsive documents.  There is no indication in the record that DHS conducted any search in response to plaintiff's FOIA request.[11]  Accordingly, for this reason alone, DHS's motion for summary judgment must be denied.

---

[11]     As plaintiff recognizes, certain documents in the possession of DHS may fall within the FOIA Exemptions.  That issue, however, is not currently before the Court in that DHS failed to conduct any search.  In addition, the Court notes that neither defendant challenges the breadth of the requests sent by plaintiff.  On the face of the requests, plaintiff seeks "an exact description of what has been assigned to [her] name by DHS" that caused her to be considered "armed and dangerous."  Simply passing the request on to CBP, without more, is insufficient to satisfy this request.

2.  Count one (Privacy Act)/Count two (improper dissemination)

In count one, plaintiff seeks a declaration that defendants violated the Privacy Act by refusing to provide her with unredacted records regarding her border crossing.  She further seeks access to all documentation held by the government and an amendment to any erroneous information.  Defendants argue that they are entitled to summary judgment because TECS, which is the database used by the CBP, is exempt from the disclosure requirements set forth in the Privacy Act.  Plaintiff argues that the records contained in TECS are not exempt pursuant to 552a(k)(2) because plaintiff was denied the right to travel.   Plaintiff also claims that TECS is not exempt from the requirements in 552a(e)(10), which require an agency to establish safeguards to insure the security and confidentiality of the records.  Plaintiff also argues that Congress did not intend to permit an agency to wholly exempt itself from the civil enforcement provision in the Privacy Act.  In addition, plaintiff makes several other arguments regarding the improper dissemination of TECS records to other agencies.  According to plaintiff, defendants failed to meet their burden with regard to 522a(e)(7), which prohibits a governmental agency from maintaining documents concerning an individual's exercise of the rights guaranteed by the First Amendment.

The Court must first determine which provisions of the Privacy Act apply to the TECS system in order to analyze whether CBP is entitled to summary judgment.

The Privacy Act sets forth requirements regarding the maintenance and disclosure of information possessed by governmental agencies concerning individuals.  The Privacy Act, however, contains two "exemption" provisions, which permit agency heads to exempt a particular system of records from certain parts of the Act.  The exemption provisions provide, in

21

relevant part, as follows,

> (j) **General exemptions**.--The head of any agency may promulgate rules...to exempt any system of records within the agency from any part of this section except subsections (b), (c)(1) and (2), (e)(4)(A) through (F), (e)(6), (7), (9), (10), and (11), and (i) if the system of records is--

> (1) maintained by the Central Intelligence Agency; or

> (2) maintained by an agency or component thereof which performs as its principal function any activity pertaining to the enforcement of criminal laws, including police efforts to prevent, control, or reduce crime or to apprehend criminals, and the activities of prosecutors, courts, correctional, probation, pardon, or parole authorities, and which consists of (A) information compiled for the purpose of identifying individual criminal offenders and alleged offenders and consisting only of identifying data and notations of arrests, the nature and disposition of criminal charges, sentencing, confinement, release, and parole and probation status; (B) information compiled for the purpose of a criminal investigation, including reports of informants and investigators, and associated with an identifiable individual; or (C) reports identifiable to an individual compiled at any stage of the process of enforcement of the criminal laws from arrest or indictment through release from supervision.

> ***

> (k) **Specific exemptions**.--The head of any agency may promulgate rules, in accordance with the requirements (including general notice) of sections 553(b)(1), (2), and (3), (c), and (e) of this title, to exempt any system of records within the agency from subsections (c)(3), (d), (e)(1), (e)(4)(G), (H), and (I) and (f) of this section if the system of records is--

> (1) subject to the provisions of section 552(b)(1) of this title; [or]

> (2) investigatory material compiled for law enforcement purposes, other than material within the scope of subsection (j)(2) of this section: Provided, however, That if any individual is denied any right, privilege, or benefit that he would otherwise be entitled by Federal law, or for which he would otherwise be eligible, as a result of the maintenance of such material, such material shall be provided to such individual, except to the extent that the disclosure of such material would reveal the identity of a source who furnished information to the Government under an express promise that the identity of the source would be held in confidence, or, prior to the effective date of this section, under an implied promise that the identity of the source would be held in confidence;

> ***

22

Defendants argue that the TECS system is exempt from disclosure under both subsections (j)(2) and (k)(2).  Plaintiff makes no argument in response to defendants' contention that TECS is exempt pursuant to subsection (j)(2).  There is no question that CBP is a law enforcement agency.  In addition, a review of the records indicates that plaintiff is considered a "lookout and/or a suspected terrorist.[12]"  Therefore, the Court finds that the records properly qualify as "information compiled for the purpose of a criminal investigation...and associated with an identifiable individual."  CBP undertook appropriate steps in the Federal Register to exempt the TECS system pursuant to (j)(2).  *See*, 66 FR 53029.  A review of the Federal Register discloses that the Treasury Department exempted TECS from the purview of 5 U.S.C. § 522a (c)(3), (c)(4), (d)(1)-(4), (e)(1)-(3), (e)(4)(G), (H) and (I), (e)(5), (e)(8), (f) and (g).  Accordingly, the Court finds that TECS is not subject to the requirements set forth in these subsections.  *See also, Tamayo v, United States Department of Justice*, 932 F.Supp. 342, 344 (D.D.C. 1996)(criminal law enforcement records maintained in TECS system are exempt from the Privacy Act's disclosure requirements).

Plaintiff argues that TECS is not properly exempt under (k)(2) because her right to travel is infringed by the maintenance of the information in the TECS system.  The Court need not reach this argument.  The exemption provision set forth in (j)(2) is broader than that found in

---

[12]     The Court makes no judgment as to the accuracy of this information.  Rather, the Court simply concludes that the type of information compiled in this case qualifies under the exemption provision in (j)(2).  The Court also recognizes the hardship that may befall law abiding citizens who lack a mechanism to correct erroneous information.  This Court, however, is charged only with applying the laws Congress passes and lacks the authority to rewrite those laws.

(k)(2). Thus, even if plaintiff is correct that defendants cannot rely on exemption (k)(2), the materials at issue in this case nonetheless qualify for exemption under (j)(2).[13]

Exemption (j)(2) does not exempt the TECS system from the Privacy Act in its entirety. Rather, the exemption expressly provides that an agency may not exempt a system of records from, among other things, the nondislcosure provision.  Defendant, however, argues that TECS was properly exempted from the purview of provision (g), which is the civil enforcement provision.  Thus, according to defendants, even if a violation of the nondisclosure provision occurred, plaintiff has no mechanism by which to seek redress.  Accordingly to plaintiff, Congress could not have intended that an agency could rely on (j)(2) to exempt itself from all civil liability.  In support of her contention, plaintiff relies on *Tijerina v. Walters*, 821 F.2d 789 (D.C. Cir. 1987).  In *Tijerina*, the court rejected the government's argument that (j)(2) could be employed to exempt a system of records from the civil enforcement provisions of the Privacy Act.  The court reasoned that because (j)(2) expressly provides that an agency may not exempt itself from the nondisclosure provisions, Congress must have intended that "civil liability [would] follow as a matter of course."  In addition, the court noted that the language in (j)(2) permits an agency to exempt a "system of records" from certain provision of the Privacy Act. Because a "system of records" cannot be subject to civil liability, application of (j)(2) would make no sense.  Based on these conclusions, as well as a review of the legislative history, the court held that, "we cannot agree that at the same time it forbade agencies to exempt systems of

---

[13]     Regardless, plaintiff would not be entitled to an amendment of the information.  Exemption (k)(2) provides that, in the event maintenance of the material infringes on a federal right, the individual must be *provided* the material.  The provision does not afford plaintiff with the right to amend the material.

24

records from disclosure requirements, Congress intended them to be able to elude civil liability at their caprice."

Upon review, the Court declines to follow *Tijerina*.  As an initial matter, the plain language of the statute provides that an agency head may exempt itself from *any* subsection, other than (b), (c)(1) and (2), (e)(4)(A) through (F), (e)(6), (7), (9), (10), and (11), and (i). Noticeably absent is subsection (g), the civil enforcement provision.  While the Court acknowledges that (g) cannot literally be applied to a "system of records," the same issues arise with many of the other provisions exempted under (j)(2).  For example, the statute permits an agency head to exempt a records system from (c)(3), which requires an agency to provide an accounting of certain disclosures to the affected individual.  This provision places an obligation on the agency and is not directed at a "system of records."  Even more persuasive, however, is the fact that Congress expressly states in (j)(2) that an agency may not exempt a records system from subsection (i), which is the *criminal* enforcement provision.  Thus, Congress clearly contemplated which types of enforcement remedies would be available against individuals and/or agencies whose records qualify for exemption under (j)(2).  As such, the Court finds that, with regard to records qualifying under (j)(2), an agency head may properly exempt the agency from the civil enforcement provisions.   Having done so in this case, plaintiff may not seek redress under the Privacy Act.[14]  *See e.g.*, *Kimberlin v. United States Department of Justice*, 788

---

[14]     Plaintiff makes a number of arguments pertaining to defendant's alleged violations of the Privacy Act, including that defendant improperly invoked the "routine use" provision, failed to properly account for certain disclosures, failed to make reasonable efforts to ensure the accuracy of the records and improperly maintained records pertaining to plaintiff's First Amendment activities. Having concluded that plaintiff has no private right of action, these

F.2d 434 (7th Cir. 1986); *Ryan v. Department of Justice*, 595 F.2d 954 (4th Cir. 1979).

**CONCLUSION**

For the foregoing reasons, defendants' summary judgment motion is GRANTED in PART and DENIED in PART.  The CBP is entitled to summary judgment on plaintiff's claims arising under the Privacy Act.  The motion is DENIED to the extent it seeks summary judgment on the FOIA claims.  The Court finds that CBP must disclose all materials provided to the Court for an *in camera* review, with the exception of the material expressly identified in this Opinion.  Any such material may be redacted.  The DHS's motion for summary judgment is denied in its entirety.   In addition, the Court orders DHS to conduct a search of its records and respond to plaintiff's FOIA request.

IT IS SO ORDERED.

/s/ Patricia A. Gaughan
PATRICIA A. GAUGHAN
United States District Judge

Dated: 3/7/07

arguments need not be addressed.

26